UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SIGNATURE ASSOCIATES, INC.,

       Plaintiff,

vs.                                        Civil Action No.

SIGNATURE INTERNATIONAL GROUP, LLC      Hon.
d/b/a THE SIGNATURE GROUP REALTY, LLC,

       Defendant.                /
_____

Jason R. Abel (P70408)
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
660 Woodward Avenue
Detroit, Michigan 48226
(313) 465-7302
jabel@honigman.com
Attorneys for Plaintiff

_____

## **COMPLAINT**

Signature Associates, Inc. ("Signature"), by and through its attorneys, states

the following as its Complaint against Signature International Group, LLC d/b/a

The Signature Group Realty, LLC ("SIG"):

## **Nature of the Action**

1.     This is an action for preliminary and permanent injunctive relief and

monetary damages arising out of SIG's infringement of Signature's service marks

by the unauthorized use of confusingly similar marks to provide real estate

brokerage services in interstate and Michigan commerce.  SIG's infringement is

19093632.1

likely to have caused and to continue to cause confusion in the minds of consumers and real estate clients.  SIG's actions further constitute unfair competition and deceptive trade practices under federal and state law insofar as they likely have misled and will continue to mislead the public as to the source of SIG's services or SIG's affiliation with Signature, thus damaging the goodwill in the SIGNATURE ASSOCIATES and related service marks and diverting customers from Signature to SIG.

### Parties and Jurisdiction

2.     Signature is a Michigan corporation with its principal place of business in Michigan.  Signature is the largest-volume, full-service commercial real estate firm in the region.  Headquartered in Southfield, Michigan, Signature is the dominant real estate firm with over a 42% market share. With additional offices in Detroit, Lansing, Grand Rapids, Muskegon, Kalamazoo, and Holland, Michigan and Toledo, Ohio, Signature provides a diversity of services, including, without limitation, industrial, office, and retail brokerage, investment sales, property/asset management, market research, mortgage banking and corporate services.  Signature has been in business for over twenty-five (25) years.

2

3.     SIG is a Michigan limited liability company.  SIG represents itself to be a full service real estate firm with its principal office in Dearborn Heights, Michigan.

4.     This Court has subject matter jurisdiction under 15 U.S.C. §1121(a), 28 U.S.C. §1331, and 28 U.S.C. §1338 in that claims in this case arise under the Trademark Law of the United States, 15 U.S.C. §§1051 *et seq*.  And jurisdiction over the related state-law and common law claims exists under 28 U.S.C. §1367 because they are derived from a common nucleus of operative fact that forms part of the same case or controversy.

5.     This Court has personal jurisdiction over SIG and venue is proper in this district because (a) SIG is a Michigan limited liability company that has purposefully availed itself of the benefits of this forum by conducting and soliciting business in Michigan, (b) the injury resulting from SIG's infringement and related offenses originated in Michigan; and (c) SIG's activities giving rise to this cause of action have been performed and continue to be performed in this district.

**Signature and its Asserted Service Marks**

6.     Signature is the owner of, among other service marks, the SIGNATURE ASSOCIATES Marks, which are used and registered in connection with real estate brokerage and the leasing of real estate.

3

7. Signature's U.S. trademark registrations for the SIGNATURE ASSOCIATES Marks include:

| SIGNATURE ASSOCIATES |  | NO SIGNATURE. NO RESULTS |
|---|---|---|
| *U.S. Reg. No. 3,210,524* | *U.S. Reg. No. 3,389,900* | *U.S. Reg. No. 3,459,415* |

(collectively, the "Signature Mark(s)", **Exh. A**).

8. The registrations for these Signature Marks are all valid and incontestable and are *prima facie* evidence of the validity of Signature's rights in the Signature Marks.

9. As a result of the extensive use, registration and promotion of the Signature Marks in interstate commerce and in Michigan, Signature has acquired and owns valuable common law rights in these marks, which are well known and represent considerable goodwill to Signature.

10. Signature Associates, Inc. is also commonly referred to as "Signature" in the real estate brokerage market, and, accordingly, the "Signature" portion of the service mark registered at U.S. Reg. No. 3,389,900 is emphasized.

11. Signature also owns a registration in the State of Michigan for the SIGNATURE ASSOCIATES trademark/service mark under registration M0628.

4

**SIG's Infringement of the Signature Marks**

12.     On information and belief, SIG has adopted and begun using the <http://thesignaturegroup.org/> domain name (the "Infringing Domain"), and has begun using various "Signature"-related marks in interstate commerce (including online) in its marketing and advertising, including:

  

13.     These and other service marks used by SIG (collectively referred to as the "Infringing Marks") are confusingly and intentionally similar to the Signature Marks, in part because they emphasize the "Signature" portion of the mark.  The use of the word "group" in the mark also suggests that there is an affiliation or partnership between more than one entity.

14.     Signature never licensed, authorized or otherwise approved SIG's use of the Infringing Marks and SIG never sought or obtained a license from Signature to provide real estate services using the Signature Marks or any mark confusingly similar to the Signature Marks.

19093632.1

15.     SIG's use of the Infringing Marks, both individually and collectively, on its websites, in its domain names, and in its signage, advertising and marketing, has caused and likely will continue to cause confusion, mistake, and/or deception as to the relationship of Signature and SIG and the source, origin, sponsorship, or affiliation of SIG's services.

16.     On information and belief, SIG began using the using the Infringing Domain and is using the Infringing Marks so as to capitalize on the goodwill developed by and associated with the Signature Marks, using a confusing similar mark that creates a perceived affiliation between Signature and SIG.

17.     Customers may have mistakenly assumed that Signature and SIG are affiliated or that SIG is a licensee of Signature, when this is not the case.

18.     The confusion resulting from SIG's use of the Infringing Marks is damaging to Signature, including diluting its goodwill and brand in the Signature Marks, and is also detrimental to the public.

**<u>Signature's Attempts to Resolve SIG's Infringement</u>**

19.     Signature was unaware of SIG's use of the Infringing Marks until September 2105, when a third party contacted Signature after noting a sign by SIG.

20.     On September 8, 2015, counsel for Signature sent SIG a letter (attached as **Exhibit B**) identifying its registered service marks, informing SIG of Signature's rights, and demanding that SIG cease its use of the Infringing Marks.

6

21.    Counsel for SIG contacted counsel for Signature indicating that a response would be provided, but no such response has been delivered to-date.

22.    In light of the fame and renown of the Signature Marks, especially considering that SIG operates in the same geographic market in which signature bearing the Signature Mark is prevalent and dominant, SIG was certainly aware of the Signature Marks at the time its use of the Infringing Marks began and SIG's infringement of the Signature Marks thus has been intentional, willful and deliberate, designed specifically to trade on the goodwill associated with the Signature Marks.

23.    In addition, SIG's registration and use of the Infringing Domain, incorporating the most distinctive portion of the Signature Marks was in bad faith, and SIG has no legitimate non-infringing interest in that domain name.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114

24.    The allegations of the foregoing paragraphs are incorporated herein by reference.

25.    Despite Signature's prior trademark rights, SIG uses the Infringing Marks (which are confusingly similar to the Signature Marks) in commerce and without Signature's consent, in the sale, offering for sale, providing, distribution, and advertising of real estate and related services.  Such use has caused and likely

7

will continue to cause confusion, mistake, or deception among consumers and specifically real estate clients.

26.    SIG's actions constitute willful infringement of Signature's exclusive rights in one or more of the Signature Marks in violation of 15 U.S.C. §§ 1114 *et seq*.

27.    SIG's use of the Infringing Marks, which are colorable imitations of the Signature Marks, was done with the intent to cause confusion, mistake, and to deceive customers and real estate clients concerning the affiliation between Signature and SIG and the source or sponsorship of the services provided by SIG.

28.    Because SIG knowingly and intentionally used colorable imitations of the Signature Marks in connection with its services, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

29.    As a direct and proximate result of SIG's conduct, Signature has suffered irreparable harm to the valuable Signature Marks, its goodwill, brand and its reputation in the industry.  Unless SIG is enjoined from further infringement, Signature will continue to suffer irreparable harm for which it has no adequate remedy at law and injunctive relief is also necessary to prevent SIG from further interference with Signature's rights.

30.    As a direct and proximate result of SIG's conduct, Signature also has suffered damages in an amount which will be proved at trial.

**COUNT II**
**TRADEMARK INFRINGEMENT, UNFAIR COMPETITION,**
**FALSE DESIGNATION OF ORIGIN, AND**
**FALSE ADVERTISING UNDER 15 U.S.C. §1125**

31.     The allegations of the foregoing paragraphs are incorporated herein by reference.

32.     SIG has knowingly used the Infringing Marks in commerce in connection with the services that SIG offered, advertised, promoted, and provided.

33.     SIG's use of the Infringing Marks, as alleged above, likely confused, misled, or deceived customers, purchasers, real estate clients, and members of the general public as to the origin, source, sponsorship, or affiliation of SIG and Signature and/or SIG services and Signature's services, and likely caused such people to believe in error that SIG's services were authorized, sponsored, approved, endorsed, or licensed by Signature or that SIG was affiliated with Signature.

34.     SIG's actions were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

35.     SIG's acts constitute false and misleading descriptions of fact, false advertising, and false designations of the origin and/or sponsorship of SIG's services and constitute trademark infringement in violation of 15 U.S.C. § 1125(a).

9

19093632.1

36.     As a direct and proximate result of SIG's conduct, Signature has suffered irreparable harm to the valuable Signature Marks, goodwill, brand and its reputation in the industry.  Unless SIG is enjoined from further infringement, Signature will continue to suffer irreparable harm for which it has no adequate remedy at law and injunctive relief is also necessary to prevent SIG from further interference with Signature's rights and business.

37.     As a direct and proximate result of SIG's conduct, Signature also has suffered damages in an amount which will be proved at trial.

### COUNT III
### CYBERSQUATTING UNDER 15 U.S.C. § 1125(d)(1)(A)

38.     The allegations of the foregoing paragraphs are incorporated herein by reference.

39.     The Signature Marks are distinctive and were distinctive at the time that SIG registered the Infringing Domain.  Despite knowledge of that distinctiveness, SIG used that domain name in connection with its advertisement, marketing, providing and offering of its services.  The Infringing Domain is likely to cause confusion with the Signature Marks.

40.     SIG's use and registration of the Infringing Domain was and is in bad faith, as that term is defined by 15 U.S.C. § 1125(d)(1)(B)(i).

10

## COUNT IV
## COMMON LAW TRADEMARK INFRINGEMENT

41.     The allegations of the foregoing Paragraphs are incorporated herein by reference.

42.     Signature has the exclusive right to use the Signature Marks or any marks similar to the Signature Marks in association with any real estate brokerage services.  As a result of the continued offering of these services by Signature, the Signature Marks have become immediately recognizable and Signature has become identified in the public mind and real estate professionals as the provider of the services to which the Signature Marks are used.

43.     Signature has acquired a reputation among consumers for quality and excellence and the Signature Marks have come to symbolize that reputation.

44.     SIG, with knowledge of and intentional disregard for the rights of SIG, marketed, advertised, and provided services using the Infringing Marks, which are confusingly similar to the Signature Marks.

45.     SIG's use of the Infringing Marks has created the likelihood of confusion among consumers and real estate clients.

46.     SIG's acts constitute trademark infringement and willful infringement in violation of the common law of Michigan.

11

19093632.1

47.    As a result of SIG's conduct, Signature has suffered irreparable harm to the valuable Signature Marks, goodwill and brand.  Unless SIG is enjoined from infringement, Signature will continue to suffer irreparable harm and an injunction is necessary to prevent SIG from further interference with Signature's rights and business.

48.    As a direct and proximate result of SIG's conduct, Signature has suffered damages to the valuable Signature Marks, goodwill, brand and other damages in an amount which will be proved at trial.

## COUNT V
## UNFAIR COMPETITION

49.    The allegations of the foregoing Paragraphs are incorporated herein by reference.

50.    SIG's unlawful and unauthorized use of the Signature Marks constitutes unfair competition with Signature.

51.    SIG's conduct creates consumer confusion as to the source and origin of its services.

52.    SIG's use of the Signature Marks is an attempt to interfere with Signature's business relationship with its consumers and real estate clients and to trade on Signature's goodwill and brand name.

12

53.     As a result of SIG's conduct, Signature has suffered irreparable harm to the valuable Signature Marks, goodwill and brand.  Unless SIG is enjoined from infringement, Signature will continue to suffer irreparable harm and an injunction is necessary to prevent SIG from further interference with Signature's rights and business.

54.     As a direct and proximate result of SIG's conduct, Signature has suffered damages to the valuable Signature Marks, goodwill, brand and other damages in an amount which will be proved at trial.

### COUNT VI
### INFRINGEMENT UNDER MCL § 429.42

55.     The allegations of the foregoing Paragraphs are incorporated herein by reference.

56.     SIG has used, without Signature's consent, the Infringing Marks, which are colorable imitations of Signature's registered Michigan service mark for Signature Associates (Reg. # M0628) in connection with the marketing, advertising, providing or offering of services, which use is likely to cause confusion or mistake or to deceive as to the source or origin of such services.

57.     SIG has used the Infringing Marks and applied those marks to labels, signs, prints, packages, wrappers, social media, receptacles or advertisements

13

intended to be used upon on in conjunction with the offering of services in Michigan.

58.     SIG's use of the Infringing Marks creates the likelihood of confusion, mistake or deception among consumers.

59.     SIG's acts were committed with the knowledge that the Infringing Marks were intended to be used to cause confusion, mistake, or deception.

60.     As a result of SIG's conduct, Signature has suffered irreparable harm to the valuable Signature Marks, goodwill and brand.  Unless SIG is enjoined from infringement, Signature will continue to suffer irreparable harm and an injunction is necessary to prevent SIG from further interference with Signature's rights and business.

61.     As a direct and proximate result of SIG's conduct, Signature has suffered damages to the valuable Signature Marks, goodwill, brand and other damages in an amount which will be proved at trial.

## COUNT VII
## <u>VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT</u>

62.     The allegations of the foregoing Paragraphs are incorporated herein by reference.

14

19093632.1

63.    SIG has caused a probability of confusion or misunderstanding as to the source, sponsorship, approval or certification by Signature of services offered in conjunction with the Infringing Marks.

64.    SIG has represented that the services offered in conjunction with the Infringing Marks have sponsorship or approval that they do not have.

65.    SIG has disparaged the business or reputation of Signature by false or misleading representations of fact.

66.    Upon information and belief, SIG has willfully engaged in the deceptive methods and practices described above in violation of MCL § 445.903.

67.    As a result of SIG's conduct, Signature has suffered irreparable harm to the valuable Signature Marks and business.  Unless SIG is enjoined from infringement, Signature will continue to suffer irreparable harm and an injunction is necessary to prevent SIG from further interference with Signature's rights and business.

68.    As a direct and proximate result of SIG's conduct, Signature has suffered damages to the valuable Signature Marks, goodwill, brand and other damages in an amount which will be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Signature respectfully requests entry of a judgment granting relief against SIG as follows:

A.      A determination that SIG willfully and deliberately violated 15 U.S.C. §1114, that Signature has been damaged by such violation, and that SIG is liable to Signature for such violation;

B.      A determination that SIG willfully violated 15 U.S.C. §§1125(a) and (d)(1)(A)-(B), that Signature has been damaged by such violations, and that SIG is liable to Signature for such violations;

C.      A determination that SIG's use and registration of the Infringing Domain was and is in bad faith and that that domain should be transferred to Signature;

D.      A determination that SIG committed common law trademark infringement, that Signature has been damaged by such infringement and that SIG is liable to Signature for common law trademark infringement;

E.      A determination that SIG was engaged in unfair competition, that Signature has been damaged by such conduct, and that SIG is liable to Signature for damages arising from that conduct;

16

F.    A determination that SIG infringed on Signature's registered Michigan service mark in violation of MCL § 429.42, that Signature has been damaged by such infringement, and that SIG is liable to Signature for damages.

G.    A determination that SIG actions violated the Michigan Consumer Protection Act, that Signature has been damaged by such unlawful actions, and that SIG is liable to Signature for damages.

H.    A determination that this case is "exceptional" in the sense of 15 U.S.C. §1117(a);

I.    Under all claims for relief, that preliminary and permanent injunctions be issued enjoining SIG and its officers, employees, agents, successors and assigns, and all those in active concert and participation with SIG, and each of them who receives notice directly or otherwise of such injunctions, from:

> (1)    imitating, copying, or making any unauthorized use of the Signature Marks, or marks likely to cause confusion with them, including, but not limited to, the Infringing Marks;
>
> (2)    importing, manufacturing, producing, distributing, circulating, selling, offering, advertising, promoting, providing or displaying any service using any simulation, reproduction, counterfeit, copy, or colorable imitation of the Signature Marks, including, but not limited to, the Infringing Marks;
>
> (3)    using any simulation, reproduction, counterfeit, copy or colorable imitation of the Signature Marks in connection with the promotion, advertisement, display, offering, providing, circulation or

17

19093632.1

distribution of any service, including, but not limited to, the Infringing Marks;

(4)      using any false designation of origin or false description (including, without limitation, any letters, symbols, or designs constituting the Signature Marks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service provided by SIG is in any manner associated or connected with Signature or the Signature Marks, or is sold, manufactured, licensed, sponsored, approved or authorized by Signature;

(5)      cease using the business name Signature International Group, LLC, The Signature Group Realty, LLC or any other business name including any portion of the Signature Marks; and

(6)      all of the above with the exception of nominative fair use (limited to truthful and accurate textual statements) of the Signature Trademarks.

J.      An Order directing that SIG deliver for destruction all products, promotional and advertising materials, domain or social media names, business cards, labels, tags, signs, prints, packages, videos or other materials in its possession or under its control, bearing or using unauthorized versions of the Signature Marks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof (including, but not limited to, the Infringing Marks), and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118;

K.      An Order directing the transfer of the Infringing Domain to Signature or its designee;

18

L.      An Order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any services offered or promoted by SIG are authorized by Signature or related in any way to Signature;

M.      An Order directing SIG and its agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, to file with this Court, and serve upon Signature's counsel within thirty (30) days after entry of such judgment, a written report under oath, setting forth in detail the manner and form in which they have complied with such judgment;

N.      An Order permitting Signature, and/or auditors of Signature, to audit and inspect the books, records, and premises of SIG and related entities for a period of six (6) months after entry of final relief in this matter, to determine the scope of SIG's past use of Signature's intellectual property, including all manufacturing, distribution, and sales of products and services bearing the Signature Marks or marks likely to cause confusion with them, as well as SIG's compliance with the orders of this Court;

O.      An award of Signature's costs and disbursements incurred in this action, including Signature's reasonable attorney's fees;

19

19093632.1

P.      An award of Signature's damages trebled or, alternatively, an award of SIG wrongful profits trebled, whichever is greater, plus Signature's costs and attorney's fees, pursuant to 15 U.S.C. § 1117, MCL § 429.42, and MCL § 445.903;

Q.      An award to Signature of its costs incurred in this action, including an award of reasonable attorney fees under 17 U.S.C. § 1114, MCL § 429.42, and MCL § 445.903;

R.      An award of Signature's damages arising out of SIG's acts;

S.      An award of any additional damages authorized under any statute or common law;

T.      An Order requiring SIG to file with the Court and provide to Signature an accounting of all sales and profits realized by SIG through the use of the Infringing Marks;

U.      An award of interest, including pre-judgment interest on the foregoing sums; and

V.      Such other and further relief as the Court may deem just and appropriate.

20

19093632.1

## **DEMAND FOR JURY**

**Signature Associates, Inc.** demands a jury trial on all the issues so triable.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
Attorneys for Plaintiff

By: /s/ Jason R. Abel_____
      Jason R. Abel (P70408)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7302
jpa@honigman.com

Dated:  October 8, 2015

21